Raytheon Demilitarization Co., Philadelphia, Pa., is being awarded a $78,849,184 increment as part of a $511,608,405 cost-plus-award-fee/firm-fixed-price contract for the construction, operation, and closure of the Pine Bluff Chemical Agent Disposal Facility. Work will be performed at Pine Bluff, Ark., and is expected to be completed by Dec. 31, 2005. Contract funds will not expire at the end of the current fiscal year. There were 130 bids solicited on July 8, 1994, and three bids were received. The contracting activity is the U.S. Army Armament, Munitions and Chemical Command, Rock Island, Ill. (DAAA09-97-C-0098).

Source: http://www.defenselink.mil/contracts/contract.aspx?contractid=1082

32

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE OF PAGES |
|---|---|
| Construction | 1 \| 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If Applicable) |
|---|---|---|---|
| A00069 | See Block 16C | A97-0098-048 | |

| 6. ISSUED BY CODE J | 7. ADMINISTERED BY (If other than Item 6) CODE |
|---|---|
| US Army Engineering & Supp Ctr<br>4820 University Square, P.O. Box 1600<br>Huntsville, Alabama<br>35618-1822 | U.S. Army Corps of Engineers<br>Pine Bluff Chem Demil Resident Office<br>Bldg 57-150, Webster Road<br>Pine Bluff, Arkansas 71602 |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | | 9A. AMENDMENT OF SOLICITATION NO. / 9B. DATED (SEE ITEM 11) / 10A. MODIFICATION OF CONTRACT/ORDER NO. / 10B. DATED (SEE ITEM 13) |
|---|---|---|
| Raytheon Demilitarization Co.<br>P. O. Box 8223<br>30 South 17 Street<br><br>Philadelphia, PA 19101-8223 | √ | 9A. AMENDMENT OF SOLICITATION NO.:<br>9B. DATED (SEE ITEM 11):<br>10A. MODIFICATION OF CONTRACT/ORDER NO.: DAAA09-97-C-0098<br>10B. DATED (SEE ITEM 13): 97 Jul 25 |
| CODE / FACILITY CODE | | |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitations and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

See Page 2.

Contract Amount Increased $1,792,381.00, Available Funding Increased $923,076.00.

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation, date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B). |
| √ | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:<br>52.243-4, Changes 52.242-14, Suspension of Work |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor ☑ is not, ☐ is required to sign this document and return original and ____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Contract for PINE BLUFF CHEM DISPOSAL FAC at Pine Bluff, Arkansas

PB048 Interim Payment, REA Part A

See Page 2.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| | | Emily Durham<br>Administrative Contracting Officer | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | | BY Emily D. Durham<br>(Signature of Contracting Officer) | 15 Feb 00 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105-2

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

| MODIFICATION OF CONTRACT | DATE SIGNED<br>See Block 16C | PAGE OF PAGES<br>2 \| 2 |
|---|---|---|

Contract No. DAAA09-97-C-0098
Modification No. A00069
Contractor: Raytheon Demilitarization Co.
Contract Title: PINE BLUFF CHEM DISPOSAL FAC
Location: Pine Bluff, Arkansas

12. ACCOUNTING AND APPROPRIATION DATA (CONTINUED)

| APPROPRIATION | | CONTRACT CHANGE | FUNDING CHANGE |
|---|---|---|---|
| 002JNB (00 MCD) | | $923,076.00 | $923,076.00 |
| 002NT3 (00 PROC) | | $869,305.00 | $0.00 |
| | Total | $1,792,381.00 | $923,076.00 |

14. DESCRIPTION OF MODIFICATION (CONTINUED)

A. SCOPE OF WORK

PB048 Interim Payment, REA Part A

This change case will compensate the contractor for Government delays to the notice to proceed (NTP). As a result of the lengthy permit process after the award date, the Government caused delays which delayed the issuance of the NTP to the contractor. These delays are not the responsibility of the contractor. Thus, escalation of costs from the time of anticipated NTP to the actual NTP, 15 Jan 99, were incurred by the contractor through no fault or neglience on the part of the contractor. This modification allows for an interim payment in the amount of ~~$923,076.00~~. $1,792,381.00.

B. CHANGE IN CONTRACT SPECIFICATIONS

None.

C. CHANGE IN CONTRACT DRAWINGS

None

D. CHANGE IN CONTRACT PRICE

Total contract price is increased by $1,792,381.00.

The following revisions shall be made to the pricing schedule.

| NEW/ REVISED | ITEM NO. | DESCRIPTION | QUANTITY | UNIT PRICE | CHANGE AMOUNT |
|---|---|---|---|---|---|
| Revised | 0003AA | Site Preparation/Improvements | 1.00 LS | -- | $156,923.00 |
| Revised | 0003AB | Exterior electrical | 1.00 LS | -- | $156,923.00 |
| Revised | 0003AK | Paving and Surfacing | 1.00 LS | -- | $156,923.00 |
| Revised | 0003AL | Sanitary Sewer | 1.00 LS | -- | $156,923.00 |
| Revised | 0003AM | Water Distribution System | 1.00 LS | -- | $156,923.00 |
| Revised | 0003AN | Storm Drainage | 1.00 LS | -- | $138,461.00 |
| Revised | 0004BJ | Miscellaneous Equipment | 1.00 LS | -- | $869,305.00 |
| | | | | Total | $1,792,381.00 |

E. CHANGE IN CONTRACT TIME

The contract completion date shall remain unchanged by reason of this modification.

# PRICE NEGOTIATION MEMORANDUM

CONTRACT DAAA09-97-C-0098

PINE BLUFF CHEMICAL AGENT DISPOSAL FACILITY

PINE BLUFF ARSENAL, ARKANSAS 71602

*PBIOC990003 NEGOTIATED SETTLEMENT*

CHANGE REQUEST NUMBER

PB-IOC-990003

(Request for Equitable Adjustment Due to Delay in Notice to Proceed (Part 1 (A) of 2))

# PRICE NEGOTIATION MEMORANDUM – CONSTRUCTION CONTRACTS

| PROJECT DESCRIPTION AND LOCATION: | CONTRACT NO: | |
|---|---|---|
| Pine Bluff Chemical Agent Disposal Facility<br>Pine Bluff Arsenal, Arkansas 71602-9500 | DAAA09-97-C-0098 | |
| CONTRACTOR NAME AND ADDRESS:<br><br>Raytheon Demilitarization Company<br>30 South 17 Street<br>Philadelphia, PA 19101 | CHANGE REQ NO:<br><br>PB-IOC-990003 | TYPE OF FIRM:<br>__ INDIVIDUAL<br>__ PARTNERSHIP<br>__ JOINT VENTURE<br>X CORPORATION<br>INCORPORATED IN THE STATE OF ______ |

APPROPRIATION DATA AND AMOUNT:

NECESSITY FOR CHANGE/REASON FOR OMISSION FROM ORIGINAL PLANS AND SPECIFICATIONS:

Revise the contract documents to incorporate the impact(s) caused by the delay in the issuance of the formal contract Notice to Proceed. The Notice to Proceed was delayed due to a formal bid protest and lack of Government required environmental permits.

This modification is associated with material, subcontract, equipment and straight labor escalations. The contractor has entitled this portion of his overall Request for Equitable Adjustment as "Part A". "Part B", due in late February of 2000, will address labor per diem/incentives and associated labor training.

The contractor was given direction for the submission of this modification (Request for Equitable Adjustment) via Industrial Operations Command's letter IOC980003 dated 08 June 1998. Additionally the contractor was presented with further direction requesting the submission of a formal Request for Equitable Adjustment via Industrial Operations Command's letter PBIOC990003 date 26 January 1999.

GOVERNMENT REPRESENTATIVES (NAME AND ADDRESS):

Neal Graham, CEHNC-CD-TS-CA

CONTRACTOR REPRESENTATIVES (NAME AND ADDRESS):

D'Etta K. Costello, Raytheon Demilitarization Company, Building 57-210 Webster Road, Pine Bluff Arsenal, Arkansas 71602
Doug Autsolief, Raytheon Constructors, Inc., Building 57-210 Webster Road, Pine Bluff Arsenal, Arkansas 71602

PLACE AND DATE OF NEGOTIATIONS:

Negotiations were conducted via telephone conference on 10 February 2000

FINAL NEGOTIATED PRICE(S):

Direct Costs - $11,117,625
Schedule Costs for Time/Impacts – $282,375

Total Costs - $11,400,000

TIME DURATIONS:

The time issue was corrected/implemented with the formal contract Notice to Proceed. Therefore, the contractor is not requesting a further extension of the contract performance period.

INITIAL GOVERNMENT ESTIMATE/BASIS FOR UPWARD/DOWNWARD REVISION, IF APPLICABLE:

IGE - $2,746,922. Basis for upward/downward revision includes omissions in the IGE, circumstances/facts discovered during the technical analysis and accompanying DCAA audit, and the fact that the IGE used straight-line escalation assumptions throughout the calculations while the contractor was able to provide actual material quotes and audited Labor Union negotiated labor rates. See attached Price Negotiation Memorandum for details.

ATTACHMENT: PRICE NEGOTIATION MEMORANDUM – RESUME OF NEGOTIATIONS

CEHNC FORM 965a
1 NOV 94

**REQUEST FOR EQUITABLE ADJUSTMENT**
**DUE TO STOP WORK ORDER DELAY IN NOTICE TO PROCEED**

**Contract No. DAAA09-07-C-0098**
**CHANGE REQUEST NUMBER PB-IOC-PP0003**

| DESCRIPTION | ORIGINAL SUBMITTED PROPOSAL 18-Jun-99 | PART A (REVISED) PROPOSAL 18-Jun-99 | GOVERNMENT ESTIMATE 10-Jun-99 | PRE-NEGOTIATION OBJECTIVE 01-Feb-00 | NEGOTIATED RESULTS 10-Feb-00 |
|---|---|---|---|---|---|
| **1. DIRECT COSTS** | | | | | |
| 1a. Craft Labor | $ 1,328,075 | $ 1,328,075 | | $ 1,328,075 | $ 1,328,075 |
| 1b. Construction Equipment | $ 445,156 | $ 445,156 | | $ 445,156 | $ 445,156 |
| 1c. Permanent Plant Material | $ 2,565,322 | $ 2,476,759 | | $ 2,476,759 | $ 2,476,759 |
| 1d. Support Labor & Other Direct Costs | $ 995,153 | $ 995,153 | | $ 995,153 | $ 995,153 |
| 1e. Taxes | $ 166,746 | $ 160,989 | | $ 160,989 | $ 160,989 |
| 1f. Direct Labor Compensation -(Per Diem) | $ 1,875,047 | - | | - | - |
| 1g. Craft Training | $ 1,853,974 | - | | - | - |
| 1h. Schedule Impact (Concrete Placement) | $ 281,505 | $ 227,923 | | $ 227,923 | $ 227,923 |
| Total Part 1. | $ 6,510,978 | $ 5,634,055 | $ 2,471,922 | $ 5,634,055 | $ 5,634,055 |
| **2. SUBCONTRACTS** | | | | | |
| 2a. Subcontract Escalation | $ 1,730,473 | $ 1,730,473 | W/ABOVE | $ 1,730,473 | $ 1,730,473 |
| 2b. Clearing and Grubbing | $ 54,452 | $ 54,452 | | $ 54,452 | $ 54,452 |
| Total Part 2. | $ 1,784,926 | $ 1,784,925 | $ - | $ 1,784,925 | $ 1,784,925 |
| **3. PROPOSAL PREPARATION COSTS** | | | | | |
| 3a. Professional Staff (Site) | $ 63,899 | $ 71,655 | | $ - | $ 71,655 |
| 3b. Clerical Support | $ 560 | $ 560 | | $ - | $ 149 |
| 3c. Professional Staff (Off-Site) | $ 113,231 | $ 122,616 | | $ 122,616 | $ 122,616 |
| 3e. Expenses | $ 43,871 | $ 41,868 | | $ 41,868 | $ 41,868 |
| Total Part 3. | $ 221,561 | $ 236,699 | $ 275,000 | $ 164,484 | $ 236,288 |
| **4. Professional Staffing Costs** | | | | | |
| 4a. RCI A/E Engineering Services | $ 510,445 | $ 510,445 | | $ 510,445 | $ 510,445 |
| 4b. RCI Start Up / Field Office | $ 669,298 | $ 669,298 | | $ 669,298 | $ 669,298 |
| 4c. OOPS/Relocation Expenses | $ 541,067 | $ 541,067 | | $ 541,067 | $ 541,067 |
| Total Part 4. | $ 1,720,810 | $ 1,720,810 | $ - | $ 1,720,810 | $ 1,720,810 |
| **5. GENERAL & ADMINISTRATIVE (G&A)** | | | | | |
| 5a. G&A Rate Increase (1997-1999) | $ 1,202,318 | $ 1,171,430 | | $ 1,171,430 | $ 1,171,430 |
| 5b. G&A (Change Order Costs ) | $ 222,535 | $ 134,292 | | $ 134,292 | $ 134,292 |
| 5c. G&A ( Proposal Prep Costs) | $ 11,221 | $ 15,484 | | $ 16,484 | $ 15,484 |
| Total Part 5. | $ 1,436,074 | $ 1,321,206 | $ - | $ 1,321,206 | $ 1,321,206 |
| **6. INSURANCE** | | | | | |
| 6a. Insurance Rate Increase (1997-1999) | $ 519,078 | $ 519,078 | | $ 519,078 | $ 519,078 |
| 6b. Insurance (.5% of Total Change Case) | $ 84,825 | $ 62,702 | | $ 62,301 | $ 62,702 |
| Total Part 6. | $ 603,903 | $ 581,780 | $ - | $ 581,379 | $ 581,780 |
| **7. BONDS** | | | | | |
| 7a. Bond Increase (1997 - 1999) | $ 54,098 | $ 54,098 | | $ 54,098 | $ 54,098 |
| 7b. Bond (.533% of Total Change Order | $ 90,424 | $ 66,838 | | $ 66,838 | $ 66,838 |
| Total Part 7. | $ 144,522 | $ 120,936 | $ - | $ 120,936 | $ 120,936 |
| TOTAL COST LEVEL (Total Parts 1 thru 7.) | $ 15,422,773 | $ 11,399,954 | $ 2,746,922 | $ 11,328,196 | $ 11,400,000 |
| 8. RAYTHEON FEE (10%) Total Part 8. | $ 1,542,277 | $ 1,139,995 | | $ 28,237 | $ - |
| **TOTAL CHANGE ORDER PRICE:** | $ 16,965,050 | $ 12,539,949 | $ 2,746,922 | $ 11,356,433 | $ 11,400,000 |

COEPB00001202

# RESUME OF NEGOTIATIONS

Contract Number DAAA09-97-C-0098

Pine Bluff Chemical Agent Disposal Facility
Pine Bluff Arsenal, Arkansas

Change Request Number

PB-IOC-990003
(Request for Equitable Adjustment Due to Delay in Notice to Proceed (Part 1 (A) of 2))

Dates and amounts of the original proposal, independent Government estimate, and pre-negotiation objective:

Contractor's Proposal (Direct Costs and Time/Labor Impacts) was dated 18 June 1999 and presented in the amount of $16,965,050. The contractor elected to remove the labor Per Diem and Training portions of the document and submit them in late February 2000 as Part II (B) of his proposal. The contractor then revised his original proposal accordingly, dated 15 December 1999 presented in the amount of $12,539,949. (Tab 6)

Independent Government Estimate was dated 10 June 1999 and presented in the amount of $2,746,922. (Tab 7)

Pre-Negotiation Objective was prepared 01 February 2000 through 03 February 2000 and presented with a range of $11,428,191 to $11,480,000. (Tab 8)

Dates of negotiations:

Negotiations were conducted via telephone conference 10 February 2000.

Outline of the justification for any time extension:

All time issues were corrected/implemented with the final issuance of the formal contract Notice to Proceed. Therefore, the contractor did not request a further extension of the contract performance period.

RECONCILIATION OF THE SETTLEMENT TO THE PRENEGOTIATION OBJECTIVES:

As a result of the DCAA audit performed for this particular Request for Equitable Adjustment as well as associated fact finding efforts, the Government Pre-Negotiation Objective agreed with the contractor's individual line item positions except for Proposal Preparation Costs and Profit. These two categories and the results of the negotiations are discussed below.

Proposal Preparation Costs:

The Government took the position that since the applicable portion of the contract covered under this Request for Equitable Adjustment is Firm Fixed Price, the Proposal Preparation

Costs for the "site" personnel and expenses are not allowed since those individuals and items are already accounted for under the original contract. Therefore the contractor's request for Proposal Preparation Costs were reduced accordingly in the Pre-Negotiation Objective. (Note: The actual Pre-Negotiation Excel Spreadsheet failed to show the aforementioned reduction. The negotiation objective was stated as a range from $11,428,191 - $11,480,00. Applying the correct Proposal Preparation Costs reductions, the range should have been $11,356,433 - $11,428,648. However, the error was discovered during negotiations and the corrected range was met with a bottom-line cost of $11,400,000.)

During negotiations, the contractor reminded the Government that during fact-finding efforts it was revealed that the contractor had brought in outside help for the development of the REA to assist the site staff. (This help was in addition to the "off site" costs.) Specifically, the contractor's revised proposal (Part A) included a breakdown of the individuals assigned to the task and team members Mausolf, Blake, and Mao were the major contributors to the REA details and development and are listed under the site cost category even though they are in reality "off site" personnel since they are not present at Pine Bluff. It was agreed upon that these people are not everyday site assets and their costs were added back into the Government's objective thereby bringing the target more in line with the original Government estimate and within $20,000 of the contractor's proposal. The final difference in cost was bridged as a settlement effort to successfully complete the negotiation process.

Profit:

The contractor vehemently opposed the Government's "no profit" position and in fact forwarded a five page point paper supporting their position for justification of profit award. (Attachment A ) The Government held its position and went "step-by-step" through the FAR. Specifically, the Government was able to convince the contractor that the Stop Work Order referenced in previously issued IOC correspondence was in error. The Stop Work Order referenced was 52.242-15 which is for negotiated contracts and supply/service type contracts. The Stop Work Order clause applicable to facilities acquisition is 52.242-16 per Far Clause 42.1305. Stop Work Order clause 52.242-16 states that the Government "shall not be liable to the Contractor for damages or loss of profits because of a stop-work order issued under this clause." The contractor finally conceded that profit would not be allowed.

Based on the above record of events and attached supportive documentation, recommendation is respectfully made for official acceptance and formal incorporation into the current contract documents.

Prepared by: [signature] 2/18/00
Neal Graham
Negotiations Team

Recommended for Approval: [signature]
Terry Burton
Negotiations Team Leader

Reviewed for Legal Sufficiency: [signature]
Charles T. Frew
Office of Counsel

Concur with Settlement: [signature]
Houston H. Townsend, Jr.
Administrative Contracting Officer

MAY.16.2000 11:02AM RAYTHEON 5064B3563 NO.245 P.3
MAY-16-2000 TUE 07:48 AM FAX NO. P. 03

# ~~AMENDMENT OF SOLICITATION~~/MODIFICATION OF CONTRACT

| | |
|---|---|
| 1. CONTRACT ID CODE | Construction |
| PAGE OF PAGES | 1 3 |
| 2. ~~AMENDMENT~~/MODIFICATION NO. | A00089 |
| 3. EFFECTIVE DATE | See Block 16C |
| 4. REQUISITION/~~PURCHASE REQ.~~ NO. | A97-0098-048 |
| 5. PROJECT NO. (If applicable) | |
| 6. ISSUED BY CODE J | US Army Engineering & Supp Ctr<br>4820 University Square, P.O. Box 1600<br>Huntsville, Alabama<br>35618-1822 |
| 7. ADMINISTERED BY (If other than Item 6) CODE | U.S. Army Corps of Engineers<br>Pine Bluff Chem Demil Resident Office<br>Bldg 57-210, Webster Road<br>Pine Bluff, Arkansas 71602 |
| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | Raytheon Demilitarization Co.<br>P. O. Box 8223<br>30 South 17 Street<br>Philadelphia,PA 19101-8223 |
| 9A. AMENDMENT OF SOLICITATION NO. | |
| 9B. DATED (SEE ITEM 11) | |
| 10A. MODIFICATION OF CONTRACT/~~ORDER~~ NO. | ✓ DAAA09-97-C-0098 |
| 10B. DATED (SEE ITEM 13) | 97 Jul 25 |
| CODE | |
| FACILITY CODE | |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitations and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See Page 2.
Contract Amount Increased $22,500,000.00. Available Funding Increased $1,587,074.00.

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/~~ORDERS~~, IT MODIFIES THE CONTRACT/~~ORDER~~ NO. AS DESCRIBED IN ITEM 14.

☐ A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

☐ B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation, date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

✓ C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
52.0242-0014- SUSPENSION OF WORK

☐ D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not, ☑ is required to sign this document and return original and 1 copies to the issuing office.

14. DESCRIPTION OF ~~AMENDMENT~~/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Contract for PINE BLUFF CHEM DISPOSAL FAC at Pine Bluff, Arkansas
PB0481bREA Due to Delay in NTP (Part B)

See Page 2.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| | |
|---|---|
| 15A. NAME AND TITLE OF SIGNER (Type or print) | Claire F. Bama<br>Manager, Contracts |
| 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | Houston Townsend<br>Administrative Contracting Officer |
| 15B. CONTRACTOR/~~OFFEROR~~ | [signature] (Signature of person authorized to sign) |
| 15C. DATE SIGNED | 5/15/00 |
| 16B. UNITED STATES OF AMERICA | BY [signature] (Signature of Contracting Officer) |
| 16C. DATE SIGNED | 5/19/00 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
30-105-2
STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

42

COEPB00000004

| MODIFICATION OF CONTRACT | DATE SIGNED | PAGE OF PAGES |
|---|---|---|
| | See Block 16C | 2 \| 3 |

Contract No. DAAA09-97-C-0098
Modification No. A00089
Contractor: Raytheon Demilitarization Co.
ract Title: PINE BLUFF CHEM DISPOSAL FAC
tion: Pine Bluff, Arkansas

12. ACCOUNTING AND APPROPRIATION DATA (CONTINUED)

| APPROPRIATION | | CONTRACT CHANGE | FUNDING CHANGE |
|---|---|---|---|
| FY00 PROC - 002NT3 | | $11,250,000.00 | $0.00 |
| FY00 MCD - 002JNB | | $10,553,498.34 | $890,572.34 |
| FY95 MCD - 001JS2 | | $696,501.66 | $696,501.66 |
| | Total | $22,500,000.00 | $1,587,074.00 |

14. DESCRIPTION OF MODIFICATION (CONTINUED)

## A. SCOPE OF WORK

PB048IbREA Due to Delay in NTP (Part B)

PB048 Negotiated Settlement of Request for Equitable Adjustment Due to Delay in Notice to Proceed (Part 2 (B) of 2).

This modification provides settlement for all cost and time issues associated with Part 2 (B) of the aforementioned Request for Equitable Adjustment. This modification requires the contractor to complete the project within the current contract performance period, and eliminates the need for any extensions to the current contract completion date of 07 December 2001.

This scope of work is further clarified by Attachment A (Scope of Work) which supersedes the Assumptions, Conditions, and Clarifications contained in the contractor's original proposal of 23 February 2000.

Incremental funding for CLIN 4 is unchanged by this modification.

## B. CHANGE IN CONTRACT SPECIFICATIONS

The contract specifications remain unchanged.

## C. CHANGE IN CONTRACT DRAWINGS

The contract drawings remain unchanged.

## D. CHANGE IN CONTRACT PRICE

Total contract price is increased by $22,500,000.00.

The following revisions shall be made to the pricing schedule.

| NEW/ REVISED | ITEM NO. | DESCRIPTION | QUANTITY | UNIT PRICE | CHANGE AMOUNT |
|---|---|---|---|---|---|
| Revised | 0003BA | REA Part B (Delay in NTP) | 1.00 LS | -- | $11,250,000.00 |
| Revised | 0004BR | REA Part B (Delay in NTP) | 1.00 LS | -- | $11,250,000.00 |
| | | | | Total | $22,500,000.00 |

## E. CHANGE IN CONTRACT TIME

The contract completion date shall remain unchanged by reason of this modification.

## F. CLOSING STATEMENT

It is understood and agreed that pursuant to the above, the contract performance period is not affected by the modification and that no contract time extensions has been or will be requested or justified.

| MODIFICATION OF CONTRACT | DATE SIGNED<br>See Block 16C | PAGE OF PAGES<br>3 \| 3 |
|---|---|---|

Contract No. DAAA09-97-C-0098
Modification No. A00089
Contractor: Raytheon Demilitarization Co.
Contract Title: PINE BLUFF CHEM DISPOSAL FAC
Location: Pine Bluff, Arkansas

It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the Contractor and its Subcontractors and Suppliers for all costs and markups directly or indirectly attributable for the scope of this modification, for any and all delays related thereto, and for performance of the change within the time frame stated.

# Scope of Work

Modification Number A00089

Contract Number DAAA09-97-C-0098

Pine Bluff Chemical Agent Disposal Facility
Pine Bluff Arsenal, Arkansas

(Request for Equitable Adjustment Due to Delay in Notice to Proceed (Part 2 (B) of 2))

The efforts proposed for performance of the extended overtime schedule and selected second shift will be performed under the existing terms and conditions of the base contract.

This modification addresses cost and schedule adjustments beyond those previously negotiated through Construction Revision 8.

This modification assumes that during the extended 5 x 10's and second shift activities, the Government will review and approve or return for resubmission submittals on or before 30 days.

The contractor assumes all responsibility for fulfillment of any and all construction schedule milestones and requirements for the construction period of April 2000 through 07 December 2001 and also agrees that all labor inefficiencies applicable to this modification, if any, for the aforementioned construction period are included in the price of this modification. Future change cases may require cost or schedule adjustments, including inefficiencies, due to those change cases.

The contractor has proposed the following actions for inclusion in this modification. The contractor will assess these actions for optimal results, which may require plan adjustments, at no change in price, which will be coordinated and approved by the Resident Engineer. This modification includes:

Parity to Little Rock Wage Scale

Contractor will establish parity wage rates for all crafts (Prime and Subcontractor) at prevailing Little Rock Union Wage Rates, including a maximum escalation of 4%, based on Building Trade negotiations and wage rate addendum to occur in May 2000, for rates through 07 December 2001.

Travel Allowance and Per Diem

Contractor will provide a travel allowance and per diem payment of $15.00 per day for all applicable craft labor (Prime and Subcontractor) living within eighty miles of the project site and $40.00 per day for all workers living more than eighty miles from the project site. These payments will only be paid for the craft personnel who report to work and will be paid for days that are cut short due to weather. The payments will be made from April 2000 through 07 December 2001 and includes extended 5 x 10 schedule and selected second shift efforts. The contractor may, at no change in contract price, adjust the travel and per diem payments and distances to meet its project requirements and to be competitive with other projects in the area.

Extended 5 x 10 Schedule and Selected Second Shift

The contractor will incorporate into its work plan an extended 5 x 10 work schedule for all crafts (Prime and Subcontractor) from April 2000 through 07 December 2001 based on alternating four weeks of 5 x 10 schedules with two weeks of regular 4 x 10 schedules through the April 2000 – 07 December 2001 performance period. The contractor will also incorporate a selected second shift effort (based on the proposed 294,772 man hours and associated costs) into its work plan for direct hire craft for activities on the critical path. The contractor may adjust the overtime and second shift activities, at no change in price, to meet the project schedule. Changes to the extended overtime plan and selected shift work scope due to future change cases may require adjustments to the above shift plans, however, these adjustments will be addressed and documented in the applicable change case.

Full-Time Labor Relations Manager

The contractor will hire and employ a full-time labor manager for 17 months, starting in May 2000.

Attendance Incentive Program

The contractor will implement an Attendance Incentive Program for the performance period of April 2000 through 07 December 2001, awarding $350 to approximately 1% of the total direct craft who meet qualification criteria for attendance and safety.

Union Dues for Open Shop

This modification includes payment of approximately $37,000 for Union Dues for approximately 10% of craft designated as Open Shop employees who are necessary to supplement the project to insure proper labor resources.

In accordance with the original requirements of the base contract, the contractor and the Resident Engineer will establish specific and clear project controls for the monitoring and measurement of this modification action. The controls will include NAS outlines/activities, regularly scheduled performance meetings, clearly documented project schedule milestones, and establishment of separate SUBCLINS for earned value tracking of activities related to this modification. The controls will be established and implemented no later than 19 May 2000.

This modification outlines the minimal effort that the contractor is agreeing to take to regain and maintain project schedule. The intent of this modification is to also allow the contractor some flexibility in executing his various program initiatives and the Government understands that the contractor may indeed have to alter his work plan/method at no change in price to meet the project schedule. Any alterations to the outlined plans of the modification will be presented and approved by the Resident Engineer.

This modification allows for other compensation to the contractor for labor issues related to future change cases as long as the contractor clearly demonstrates and justifies that labor efforts associated with future change cases have been impacted above and beyond the efforts required by this modification.

If the Government requires more than 30 days for submittal review during the extended 5 x 10's and second shift activities, the contractor may not be able to effectively continue the recommended program for the alternative schedules, such as extended 5 x 10's and second shift, which may affect the price and schedule for these actions.

# PRICE NEGOTIATION MEMORANDUM

CONTRACT DAAA09-97-C-0098

PINE BLUFF CHEMICAL AGENT DISPOSAL FACILITY

PINE BLUFF ARSENAL, ARKANSAS 71602

*PBIOC990003 NEGOTIATED SETTLEMENT*

CHANGE REQUEST NUMBER

PB-IOC-990003

(Request for Equitable Adjustment Due to Delay in Notice to Proceed (Part 2 (B) of 2))

# PRICE NEGOTIATION MEMORANDUM – CONSTRUCTION CONTRACTS

| PROJECT DESCRIPTION AND LOCATION: | CONTRACT NO: | |
|---|---|---|
| Pine Bluff Chemical Agent Disposal Facility<br>Pine Bluff Arsenal, Arkansas 71602-9500 | DAAA09-97-C-0098 | |
| CONTRACTOR NAME AND ADDRESS:<br><br>Raytheon Demilitarization Company<br>30 South 17 Street<br>Philadelphia, PA 19101 | CHANGE REQ NO:<br><br>PB-IOC-990003 | TYPE OF FIRM:<br>__ INDIVIDUAL<br>__ PARTNERSHIP<br>__ JOINT VENTURE<br>X CORPORATION<br>INCORPORATED IN THE STATE OF ______ |

APPROPRIATION DATA AND AMOUNT:

NECESSITY FOR CHANGE/REASON FOR OMISSION FROM ORIGINAL PLANS AND SPECIFICATIONS:

Revise the contract documents to incorporate the impact(s) caused by the delay in the issuance of the formal contract Notice to Proceed. The Notice to Proceed was delayed due to a formal bid protest and lack of Government required environmental permits.

This modification is associated with craft labor wage rate parity, modified/extended work schedules, craft labor travel/per diem, and craft labor attendance incentives for both the prime contractor and his subcontractors. The contractor has entitled this portion of his overall Request for Equitable Adjustment as "Part B". "Part A", settled in early February of 2000, addressed material, subcontract, equipment and straight labor escalations.

The contractor was given direction for the submission of this modification (Request for Equitable Adjustment) via Industrial Operations Command's letter IOC980003 dated 08 June 1998. Additionally the contractor was presented with further direction requesting the submission of a formal Request for Equitable Adjustment via Industrial Operations Command's letter PBIOC990003 date 26 January 1999.

GOVERNMENT REPRESENTATIVES (NAME AND ADDRESS):

Neal Graham, CEHNC-CD-TS-CA

CONTRACTOR REPRESENTATIVES (NAME AND ADDRESS):

D'Etta K. Costello, Raytheon Demilitarization Company, P. O. Box 20130, Pine Bluff, Arkansas 71612
Doug Autsolief, Raytheon Constructors, Inc., P. O. Box 20130, Pine Bluff, Arkansas 71612

PLACE AND DATE OF NEGOTIATIONS:

Negotiations were conducted via telephone conference on 25 April 2000.

FINAL NEGOTIATED PRICE(S):

Direct Costs - $0
Schedule Costs for Time/Impacts – $22,500,000 (See "Time Durations" paragraph below.)

Total Costs - $22,500,000

| TIME DURATIONS: |
| --- |
| The time issue was corrected/implemented with the formal contract Notice to Proceed. This modification compensates the contractor for schedule impacts associated with changed labor market conditions due to the delay by the Government in the issuance of the aforementioned Notice to Proceed. This modification requires the contractor to complete the project within the current contract performance period, and eliminates the need for any extensions to the current contract completion date of 07 December 2001. |
| INITIAL GOVERNMENT ESTIMATE/BASIS FOR UPWARD/DOWNWARD REVISION, IF APPLICABLE: |
| IGE - $2,746,922. Basis for upward/downward revision includes omissions in the IGE, circumstances/facts discovered during the technical analysis and accompanying DCAA audit, and the fact that the IGE used straight-line escalation assumptions throughout the calculations while the contractor was able to provide actual, audited labor proposed cost details. See attached Price Negotiation Memorandum for details. |
| ATTACHMENT: PRICE NEGOTIATION MEMORANDUM – RESUME OF NEGOTIATIONS |

CEHNC FORM 965a
1 NOV 94

ADDENDUM ONE

RDC
Raytheon Demilitarization Company
Pine Bluff Chemical Agent Disposal Facility
Contract No. DAAA09-97-C-0098

REQUEST FOR EQUITABLE ADJUSTMENT
PART 2 (B) OF 2

| | | PART B PROPOSAL 27-Apr-00 | GOVERNMENT ESTIMATE 10-Jun-99 | PRE-NEGOTIATION OBJECTIVE 29-Mar-00 | NEGOTIATED RESULTS 25-Apr-00 |
|---|---|---|---|---|---|
| 1. | DIRECT COSTS | | | | |
| 1a. | Craft Labor (Rate parity) | $ 3,593,601 | $ - | $ 3,593,601 | $ 3,593,601 |
| 1a. | Extended 5x10's | $ 4,119,601 | $ - | $ 4,119,661 | $ 4,119,661 |
| 1a. | Second Shift | $ 2,180,177 | $ - | $ 2,180,177 | $ 2,180,177 |
| 1b. | Construction Equipment | $ - | $ - | $ - | $ - |
| 1c. | Misc Indirect | $ 865,915 | $ - | $ 865,915 | $ 865,915 |
| 1d. | Support Labor & Other Direct Costs | $ - | $ - | $ - | $ - |
| 1e. | | $ - | $ - | $ - | $ - |
| 1f. | Travel Allowance (standard schedule) | $ 4,610,759 | $ - | $ 4,149,683 | $ 4,149,683 |
| | Travel allowance Extended 5x10 schedule) | $ - | $ - | $ - | $ - |
| | Union dues for Open Shop | $ 36,941 | $ - | $ 33,246 | $ 33,246 |
| 1g. | Attendance Incentive | $ 31,150 | $ - | $ 28,035 | $ 28,035 |
| 1h. | ........................... | $ - | $ - | $ - | $ - |
| | Total Part 1. | $ 15,438,204 | $ - | $ 14,970,318 | $ 14,970,318 |
| 2. | SUBCONTRACTS | | | | |
| 2a. | Subcontract Rates to LR Parity | $ 769,409 | $ - | $ 769,409 | $ 769,409 |
| | Extended 5x10's | $ 794,039 | $ - | $ 794,039 | $ 794,038 |
| 2b. | Subcontract Travel Allowance | $ 1,126,490 | $ - | $ 1,013,841 | $ 1,013,841 |
| | Subcontract Travel Allowance (Extended 5x10's) | $ - | $ - | $ - | $ - |
| | Total Part 2. | $ 2,689,938 | $ - | $ 2,577,289 | $ 2,577,289 |
| 3. | PROPOSAL PREPARATION COSTS | | | | |
| 3a. | Raytheon Professional Staff (site) | $ 19,495 | $ - | $ - | $ 19,495 |
| 3b. | Raytheon Clerical Support (site) | $ 1,559 | $ - | $ 1,559 | $ 1,559 |
| 3c. | Raytheon Professional Staff (off-site) | $ - | $ - | $ - | $ - |
| 3d. | Subcontract | $ 22,294 | $ - | $ 22,294 | $ 22,294 |
| 3e. | Preparation Expenses | $ 10,240 | $ - | $ 10,240 | $ 10,240 |
| | Total Part 3. | $ 53,588 | $ - | $ 34,094 | $ 53,588 |
| 4. | Professional Staffing Costs | | | | |
| 4a. | Professional Staff | $ 2,456,240 | $ - | $ 2,210,618 | $ 2,210,616 |
| 4b. | Expenses | $ 447,934 | $ - | $ 403,411 | $ 403,411 |
| 4c. | Relocation Costs | $ 22,282 | $ - | $ 20,054 | $ 20,054 |
| | Total Part 4. | $ 2,926,458 | $ - | $ 2,634,081 | $ 2,634,081 |
| 5. | GENERAL & ADMINISTRATIVE (G&A) | | | | |
| 5a. | Construction field 2.251% | $ 431,146 | $ - | $ 388,031 | $ 388,031 |
| 5b. | | $ - | $ - | $ - | $ - |
| 5c. | Raytheon Demilitarization Co. G&A | $ 184 | $ - | $ 165 | $ 165 |
| | Total Part 5. | $ 431,330 | $ - | $ 388,196 | $ 388,196 |
| 6. | INSURANCE | | | | |
| 6a. | Insurance (.5% of Total Change Order) | $ 119,829 | $ - | $ 107,846 | $ 107,846 |
| | Total Part 6. | $ 119,829 | $ - | $ 107,846 | $ 107,846 |
| 7. | BOND | | | | |
| 7a. | Bond (.533% of Total Change Order) | $ 127,737 | $ - | $ 114,963 | $ 114,963 |
| 7b. | | | | | |
| | Total Part 7. | $ 127,737 | $ - | $ 114,963 | $ 114,963 |
| | TOTAL COST LEVEL (Total Parts 1 thru 7.) | $ 21,787,082 | $ - | $ 20,826,787 | $ 20,846,281 |
| 8. | RAYTHEON FEE (10%) — Total Part 8. | $ 2,178,708 | $ - | $ 1,457,875 | $ 1,648,327 |
| | TOTAL CHANGE ORDER PRICE: | $ 23,965,790 | $ - | $ 22,284,662 | $ 22,494,608 |

51

# RESUME OF NEGOTIATIONS

Contract Number DAAA09-97-C-0098

Pine Bluff Chemical Agent Disposal Facility
Pine Bluff Arsenal, Arkansas

Change Request Number

PB-IOC-990003
(Request for Equitable Adjustment Due to Delay in Notice to Proceed (Part 2 (B) of 2))

Dates and amounts of the original proposal, independent Government estimate, and pre-negotiation objective:

Contractor's Proposal was dated 23 February 2000 and presented in the amount of $23,965,790.

Independent Government Estimate was dated 10 June 1999 and presented in the amount of $2,746,922.

Pre-Negotiation Objective was prepared 30 March 2000 through 10 April 2000 and presented with a range of $22,284,662 to $22,909,465.

Dates of negotiations:

Negotiations were conducted via telephone conference 25 April 2000.

Outline of the justification for any time extension:

All time issues were corrected/implemented with the final issuance of the formal contract Notice to Proceed. This modification compensates the contractor for schedule impacts associated with changed labor market conditions due to the delay by the Government in the issuance of the aforementioned Notice to Proceed. Additionally, this modification requires the contractor to complete the project within the current contract performance period, and eliminates the need for any extensions to the current contract completion date of 07 December 2001.

RECONCILIATION OF THE SETTLEMENT TO THE PRENEGOTIATION OBJECTIVES:

Craft Labor (Rate Parity), Extended 5 x 10's, Second Shift, Miscellaneous Indirects, and Professional Staffing Costs (Prime and Subcontractors):

The contractor's position was viewed as fair and reasonable in the Pre-Negotiation Objective. However, the Government noted that the final modification (SF-30) would have to be very specific in scope and must outline in detail what the contractor is "signing up to do" and be monitored by the Government's Project Controls Team in the field. The final intent of the negotiations was to obtain a modification with no "reservation of rights" from

the contractor, making him completely responsible and liable for all labor issues for the remainder of the project including possible inefficiencies.

The Government was successful in developing a clear modification scope (Attachment A) and formal Memorandum of Understanding (Attachment B) agreed upon by the contractor during the negotiation process that achieves the intent of the Pre-Negotiation Objective for all cost and proposed work categories. The two aforementioned attachments will be drafted into the formal modification (SF-30) for final incorporation into the contract documents.

Travel Allowances, Union Dues for Open Shop, and Attendance Incentive (Prime and Subcontractors):

The 10% contractor/90% Government responsibility allotment was met in its entirety. Further, as outlined in the above paragraph, the Government was able to obtain a clear scope and Memorandum of Understanding to incorporate into the contract modification, outlining responsibilities and expectations/requirements in all categories.

Proposal Preparation Costs:

The Government questioned the Proposal Preparation Costs for "site" personnel. The contractor explained that the development of this Request for Equitable Adjustment did not fall under the standard "Request for Proposal" procedures and that package preparation efforts were performed "outside" and "above and beyond" their Request for Proposal price development operations.

CEHNC checked with the field office to inquire as to current Proposal Preparation Costs measures in place and was referred to Contract Modification A00064 which allows for cost reimbursement for Proposal Preparation Costs, detailed within the same modification document. "Site" personnel are not excluded.

Since the contractor utilized a "special" effort for the development of the Request for Equitable Adjustment and considering the aforementioned formal contract modification currently in place, the decision was made to entertain Proposal Preparation Costs. The Pre-Negotiation Objective was adjusted accordingly.

General and Administrative (G&A), Insurance, and Bond:

The Pre-Negotiation Objective was met in these categories and the contractor reduced his negotiating position fittingly.

Fee:

The Government's negotiating position stated a fee objective of 7%, with the flexibility to move to 10% for quick resolution/settlement purposes.

Much discussion was held at CEHNC concerning the details of application of fee. Specifically, portions of the contractor's proposal could be viewed as being directly associated with the "Suspension of Work" scenario due to the delay in the formal Notice to

Proceed (i.e. Craft Labor (Rate Parity)), thereby void of the fee allowance, while other portions are associated with the changed labor market conditions and the associated "path forward" necessary to now maintain project schedule, providing a fee bearing environment.

The Government informed the contractor that fee was not going to be allowed on the Craft Labor (Rate Parity) item. The contractor was not opposed to the Government's position, but remained firm in his counteroffer "bottom line" position of $22,500,000 outlined in the next paragraph. A 10% fee rate has been utilized on all previously negotiated large modifications and since the risk factor associated with this change order is considered substantial, the 10% fee rate proposed by the contractor for this modifications was considered reasonable and was used for final settlement on the remaining proposal line items.

During the negotiation efforts and fact-finding procedures, the contractor made a counteroffer of $22,500,000 in regards to his original proposal of $23,965,790 million. The contractor proved adamant in maintaining his bottom line, counteroffer position of $22,500,000 and explained that he simply could not "guarantee results" for any lesser amount and would have to pursue reservation of rights and modification de-scoping.

The Government was equally strong in its motivation and reasoning to quickly resolve the settlement of the modification, preventing any further areas of development for possible delays/changes/impacts and maintaining the liability of schedule maintenance with the contractor and all associated risks and inefficiencies.

By applying fee as outlined above, the Government's negotiation objective increased to a bottom line cost of $22,494,609. The Government increased the amount by $5,391 to reach the contractor's counteroffer of $22,500,000, thereby quickly concluding negotiations and allowing the formal modification issuance process to commence immediately.

By not allowing fee on the Craft Labor (Rate Parity), utilizing a 10% fee rate for the remaining proposal items, and "rounding up" the adjusted negotiation objective to $22,500,000, the "overall bottom line" fee rate result is 7.9%, which is well in line with the Pre-Negotiation Objective.

Based on the above record of events and attached supportive documentation, recommendation is respectfully made for official acceptance and formal incorporation into the current contract documents.

Prepared by: [signature] 02 MAY 00
Neal Graham
Negotiations Team

Recommended for Approval [signature]
Terry Burton 2 MAY 00
Negotiations Team Leader

Reviewed for Legal Sufficiency: [signature] 4 May 00
Charles T. Frew
Office of Counsel

Concur with Settlement: [signature]
Houston H. Townsend, Jr.
Administrative Contracting Officer

The efforts proposed for performance of the extended overtime schedule and selected second shift will be performed under the existing terms and conditions of the base contract.

This modification addresses cost and schedule adjustments beyond those previously negotiated through Construction Revision 8.

This modification assumes that during the extended 5 x 10's and second shift activities, the Government will review and approve or return for resubmission submittals on or before 30 days.

The contractor assumes all responsibility for fulfillment of any and all construction schedule milestones and requirements for the construction period of April 2000 through 07 December 2001 and also agrees that all labor inefficiencies applicable to this modification, if any, for the aforementioned construction period are included in the price of this modification. Future change cases may require cost or schedule adjustments, including inefficiencies, due to those change cases.

The contractor has proposed the following actions for inclusion in this modification. The contractor will assess these actions for optimal results, which may require plan adjustments, at no change in price, which will be coordinated and approved by the Resident Engineer. This modification includes:

Parity to Little Rock Wage Scale

Contractor will establish parity wage rates for all crafts (Prime and Subcontractor) at prevailing Little Rock Union Wage Rates, including a maximum escalation of 4%, based on Building Trade negotiations and wage rate addendum to occur in May 2000, for rates through 07 December 2001.

Travel Allowance and Per Diem

Contractor will provide a travel allowance and per diem payment of $15.00 per day for all applicable craft labor (Prime and Subcontractor) living within eighty miles of the project site and $40.00 per day for all workers living more than eighty miles from the project site. These payments will only be paid for the craft personnel who report to work and will be paid for days that are cut short due to weather. The payments will be made from April 2000 through 07 December 2001 and includes extended 5 x 10 schedule and selected second shift efforts. The contractor may, at no change in contract price, adjust the travel and per diem payments and distances to meet its project requirements and to be competitive with other projects in the area.

Extended 5 x 10 Schedule and Selected Second Shift



ATTACHMENT A

The contractor will incorporate into its work plan an extended 5 x 10 work schedule for all crafts (Prime and Subcontractor) from April 2000 through 07 December 2001 based on alternating four weeks of 5 x 10 schedules with two weeks of regular 4 x 10 schedules through the April 2000 – 07 December 2001 performance period. The contractor will also incorporate a selected second shift effort (based on the proposed 294,772 man hours and associated costs) into its work plan for direct hire craft for activities on the critical path. The contractor may adjust the overtime and second shift activities, at no change in price, to meet the project schedule. Changes to the extended overtime plan and selected shift work scope due to future change cases may require adjustments to the above shift plans, however, these adjustments will be addressed and documented in the applicable change case.

Full-Time Labor Relations Manager

The contractor will hire and employ a full-time labor manager for 17 months, starting in May 2000.

Attendance Incentive Program

The contractor will implement an Attendance Incentive Program for the performance period of April 2000 through 07 December 2001, awarding $350 to approximately 1% of the total direct craft who meet qualification criteria for attendance and safety.

Union Dues for Open Shop

This modification includes payment of approximately $37,000 for Union Dues for approximately 10% of craft designated as Open Shop employees who are necessary to supplement the project to insure proper labor resources.



ATTACHMENT A

# MEMORANDUM OF UNDERSTANDING IN SUPPORT OF MODIFICATION FOR REQUEST FOR EQUITABLE ADJUSTMENT DUE TO DELAY IN NOTICE TO PROCEED (PART 2(B) OF 2)

CHANGE CASE PB-IOC-990003

CONTRACT NO. DAAA09-97-0098
PINE BLUFF CHEMICAL AGENT DISPOSAL FACILITY
PINE BLUFF ARSENAL
PINE BLUFF, ARKANSAS

In accordance with the original requirements of the base contract, the contractor and the Resident Engineer will establish specific and clear project controls for the monitoring and measurement of this modification action. The controls will include NAS outlines/activities, regularly scheduled performance meetings, clearly documented project schedule milestones, and establishment of separate SUBCLINS for earned value tracking of activities related to this modification. The controls will be established and implemented no later than 19 May 2000.

This modification outlines the minimal effort that the contractor is agreeing to take to regain and maintain project schedule. The intent of this modification is to also allow the contractor some flexibility in executing his various program initiatives and the Government understands that the contractor may indeed have to alter his work plan/method at no change in price to meet the project schedule. Any alterations to the outlined plans of the modification will be presented and approved by the Resident Engineer.

This modification allows for other compensation to the contractor for labor issues related to future change cases as long as the contractor clearly demonstrates and justifies that labor efforts associated with future change cases have been impacted above and beyond the efforts required by this modification.

If the Government requires more than 30 days for submittal review during the extended 5 x 10's and second shift activities, the contractor may not be able to effectively continue the recommended program for the alternative schedules, such as extended 5 x 10's and second shift, which may affect the price and schedule for these actions.

[signature] 25 APR 00
R. Neal Graham
CEHNC-CD-TS-CA
Negotiations Team

[signature] 25 Apr 00
D'Etta K. Costello
Contracts Manager, Pine Bluff
Raytheon Demilitarization Company

MOD NEGOTIATED AT BOTTOM-LINE, LUMP SUM SETTLEMENT OF $22,500,000 (22.5 MILLION) ON 25 APR 00.

57

ATTACHMENT B