IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 04-1692C |
| THE UNITED STATES, | ) | (Judge Christine Miller) |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR A SPECIAL SCHEDULE FOR SUMMARY EXHIBITS RELATED TO PLAINTIFFS' "LABOR SHORTAGE" CLAIM, AND DEFENDANT'S MOTION FOR EXPEDITED CONSIDERATION

Defendant, the United States, respectfully requests that the Court order a special schedule for the plaintiffs, Fireman's Fund Insurance Company, American Home Assurance Company, Fidelity and Deposit Company of Maryland, J.A. Jones Construction Company and Guy F. Atkinson Construction Company, a Joint Venture (the "joint venture"), and Universal Underwriters Insurance Company (collectively, "Fireman") to offer any and all summary exhibits in support of their labor shortage claim. The United States further requests that Fireman be required to file a response to this motion by Friday, August 22, 2008, and that any reply by the United States be filed no later than Monday, August 25, 2008.

The proposed special schedule is necessary to avoid unfocused discovery into employment conditions for several classes of construction workers in an eight-state region over a period of several years. The proposed special schedule is also

likely to make it possible to resolve the labor shortage claim by summary judgment in the near future.

We respectfully request the following special schedule.

September 15, 2008. We respectfully request that Fireman be required to produce to the United States all draft summary exhibits (related to damages as well as liability) that Fireman may offer at trial in support of its labor shortage claim, together with a copy of the supporting documents, by September 15, 2008. The United States shall promptly review such summary exhibits to determine whether they are admissible pursuant to Fed. R. Evid. 1006.

September 19, 2008. We further request that Fireman be ordered to meet with counsel for the United States on or before September 19, 2008 (by telephone or in person, at a time mutually convenient to the parties) to answer questions about the proposed summary exhibits, including questions about what specific pages purportedly support specific statements or figures contained in each summary exhibit.

September 26, 2008. We request that Fireman be required to file its final versions of its proposed summary exhibits supporting liability and damages for Fireman's labor shortage claim by September 26, 2008.

October 3, 2008. The United States will file any motion *in limine* challenging any proposed summary exhibit by October 3, 2008.

October 17, 2008. The United States shall file any motion for summary judgment or other dispositive motion concerning the labor shortage claim by October 17, 2008.

This schedule is fair to Fireman because Fireman has had several years to determine whether any proof of a labor shortage exists, and how Fireman may wish to present any such proof. This schedule is consistent with the Court's desire to hold trial by March 2009. Finally, this schedule is necessary for the United States to avoid unfocused discovery into labor market conditions in an eight-state region.

## I. Fireman Has Refused To Commit To Any Proposed Proof Or Consistent Theory Of A Labor Shortage

At the hearing on July 21, 2008, we expressed doubt that Fireman's labor shortage claim had any merit, but we also noted that it is difficult make a dispositive motion while assuming any and all possible facts. Tr. 13.[1] Furthermore, we expressed concern about the difficulties of unfocused discovery and unfocused trial regarding a labor market stretched across several states. Tr. 17-18.

[1] "Tr." refers to the transcript of the hearing held on July 21, 2008.

At the same hearing, the Court also cited the need to focus upon precisely what sort of shortage in what sort of labor market Fireman is now alleging:

> In terms of couching your claim, there really has to be some notion of what we're talking about in terms of area or available labor -- either or both.
>
> You were going to draw from a certain area when the contract was bid and that's the area that should define the expectation unless something changed in the meantime. And the government will have an opportunity to respond to that notion.
>
> But there could be situations where either the identity of the labor pool or the identity of the relevant areas where you would expect to draw labor from could change after a contract was accepted in a way that was the responsibility of a government actor who had another contract in play. That could happen. These situations have to be narrowed down so that you can really attribute a cause and effect so this particular government actor with respect to the impact on your contract in an area that you both would have understood would have been the draw of available labor, and the same one that Raytheon drew on as well.

Tr. 33-34 (emphasis added).

In the Fireman Statement,[2] Fireman responded to the Court's order, and to the Court's suggestions at the hearing. Fireman alleged that it could prove a labor shortage by comparing "average monthly manpower" planned prior to contract award with

[2] "Fireman Statement" refers to "Plaintiffs' Statement Of Claim," filed by Fireman on August 5, 2008.

the joint venture's experience after June 2000, and Fireman alleged that it could prove that a single modification to the Pine Bluff contract[3] caused a labor shortage among all construction workers in an eight-state region by comparing payroll information gathered from the joint venture and from Raytheon.

The Fireman Statement was very helpful because it transformed the amorphous allegation of a "labor shortage" into specific allegations that could be tested. However, unfortunately for Fireman, its specific allegations obviously lacked merit. As we demonstrated in our response, filed August 12, 2008, the Fireman Statement had three significant flaws:

1. no plausible offer to prove that any labor shortage ever existed at the Montgomery Point dam;

2. no plausible offer to prove its allegation that modification 89 to the Pine Bluff contract created a labor shortage for all construction workers in an eight-state labor market; and

3. no plausible legal basis for liability.

Govt Response, at 2.[4]

---

[3] "Pine Bluff contract" refers to contract no. DAAA09-97-0098 between Raytheon Demilitarization Company ("Raytheon") and the United States, as amended.

[4] "Govt Response" refers to "Defendant's response to (continued...)

In its reply brief, Fireman responded to the awkward circumstance that its factual allegations were completely discredited by denying that it had ever sought to articulate its specific allegations. Fireman Reply, at 4.[5] Fireman insisted that the appropriate time to disclose its specific allegations lays sometime in the future:

> Based on the Plaintiffs' understanding of the Court's Order, the Plaintiffs' Statement did not substantially address Defendant's issues (1) and (2) above. The Plaintiffs are eager to opine as to issues (1) and (2) in the proper format, such as motions and related briefings, and fact discovery and expert reports. Furthermore, the Plaintiffs are surprised that the Defendant would request specific proof when outstanding discovery requests still exist and no depositions have been taken.

Fireman Reply, at 5 (emphasis added). Fireman is mistaken in two significant respects.

First, Fireman did "address" issues (1) and (2). Those issues were not "defendant's issues;" they were Fireman's offered factual predicates for their claim.

---

[4] (...continued)
plaintiff's statement describing the purported "labor shortage" claim," filed by the United States on August 12, 2008.

[5] "Fireman Reply" refers to "Plaintiffs' Reply to Defendant's Response to the Statement of Claim," filed by Fireman on August 15, 2008.

Second, Fireman's insistence that depositions and expert reports and other discovery are necessary and appropriate before Fireman should be required to articulate its claim and make a specific offer to prove some relevant labor shortage is perverse. It is in the interests of justice and judicial economy for discovery and trial to be focused.

In its reply, Fireman insists that we promised to make a motion to dismiss its claim in the abstract. E.g., Fireman Reply, at 3. And, indeed, we doubt that our mere issuance of a bi-lateral amendment to the Pine Bluff contract gives rise to any cause of action by Fireman under any circumstances. See Horowitz v. United States, 267 U.S. 458, 461 (1925). However, there is a much simpler way to move this case forward efficiently and fairly.

We request that Fireman be required to offer its summary exhibits now. The practical effect of such an order would be to require Fireman to articulate specific allegations concerning the labor shortage claim in a binding way.

After Fireman has filed its proposed summary exhibits, we anticipate that the labor shortage claim may be resolved by summary judgment. However, even assuming that some portion of the claim may not be dismissed, justice and judicial economy will be served because discovery and trial may be appropriately focused.

II. A Special Schedule Is Fair And Efficient

At the hearing in July, counsel for Fireman alluded to expert reports concerning Fireman's labor shortage claim, and proclaimed "they are getting close to issuance of a written report." Tr. 4.[6] Similarly, in its reply, Fireman identified "expert reports" as a "proper format" for identifying and proving a labor shortage. Fireman Reply, at 5.

As the Court knows, expert reports are discovery tools. RCFC 26.[7] Expert reports are not admissible evidence. See Fed. R. Evid. 801-07.

When Fireman refers to expert reports, we presume that Fireman is making a short-hand reference to the summary exhibits that are routinely imbedded in expert reports. Indeed, the Fireman Statement included several summary exhibits that we assume were drafted by analysts hired by Fireman. Of course,

---

[6] Counsel also claimed that Government e-mail "could be very important to our case." Tr. 4. Whatever counsel may have meant, we assume that Fireman would agree that the existence or non-existence of a specific labor shortage at any time cannot be proved by statements in Government e-mail. In any event, we plan to produce all non-privileged e-mail by the end of August.

[7] "RCFC" refers to the Rules of the United States Court of Federal Claims.

such summaries, once verified, are admissible. Fed. R. Evid. 1006.

In any event, it is fair and appropriate to require Fireman to submit its summary exhibits concerning the labor shortage claim (both liability and damages) for the scrutiny required by Fed. R. Evid. 1006 at this time. Fireman has had ample time to compile its summaries. And these summaries will identify the specific allegations which purportedly support a labor shortage claim.

Once Fireman has committed itself to some specific proof, we are confident that the claim can be resolved by summary judgment. However, even if this confidence is not justified, discovery and trial will become narrowed to a specific set of contentions. Such a result is fair, and will conserve the resources of the Court and the parties.

## CONCLUSION

We respectfully request that the Court order a special schedule for Fireman to produce summary exhibits related to its labor shortage claim. In addition, we respectfully request that the Court granted expedited consideration of this motion.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-616-0856
Fax: 202-514-7969

August 18, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on August 18, 2008, a copy of the foregoing "DEFENDANT'S MOTION FOR A SPECIAL SCHEDULE FOR SUMMARY EXHIBITS RELATED TO PLAINTIFFS' "LABOR SHORTAGE" CLAIM, AND DEFENDANT'S MOTION FOR EXPEDITED CONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier