IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 04-1692C |
| THE UNITED STATES, | ) | (Judge Christine Miller) |
| Defendant. | ) | |

DEFENDANT'S REPLY TO
PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION
FOR A SPECIAL SCHEDULE FOR SUMMARY EXHIBITS
RELATED TO PLAINTIFFS' "LABOR SHORTAGE" CLAIM,
AND DEFENDANT'S MOTION FOR EXPEDITED CONSIDERATION

In the statement of the labor shortage claim, dated August 5, 2008, the plaintiffs, Fireman's Fund Insurance Company, American Home Assurance Company, Fidelity and Deposit Company of Maryland, J.A. Jones Construction Company and Guy F. Atkinson Construction Company, a Joint Venture (the "joint venture"), and Universal Underwriters Insurance Company (collectively, "Fireman") failed to articulate any logical offer of proof that, if supported by evidence, would support the existence of any labor shortage. See Govt Response.[1] After we demonstrated this shortcoming, Fireman made no effort to defend its statement of the claim or to offer any new rationale for a labor shortage;

---

[1] "Govt Response" refers to "Defendant's response to plaintiff's statement describing the purported "labor shortage" claim," filed by the United States on August 12, 2008.

instead, Fireman merely denied that it had ever stated any factual predicate for its claim:

> Based on the Plaintiffs' understanding of the Court's Order, the Plaintiffs' Statement <u>did not substantially address Defendant's issues (1) and (2) above</u> [1. no plausible offer to prove a labor shortage at Montgomery Point, and 2. no plausible offer to prove a labor shortage in an eight-state region].

Fireman Reply, at 5 (emphasis added).[2] In summary, four years after filing its complaint, Fireman is apparently unable to offer any coherent factual predicate for its $35 million claim.

This is disappointing for two reasons. First, both Fireman and its counsel have an obligation to investigate and review claims before asserting them. <u>E.g.</u>, 41 U.S.C. § 605(c); RCFC 11. Second, the United States has been required to spend several hundred thousand dollars (to copy documents, to hire experts, to review documents, etc.) investigating a claim that is apparently completely without merit.

In these circumstances, it is appropriate for the Court to craft a schedule that will either facilitate summary judgment or reveal some triable issue.

The schedule proposed by the United States was carefully calculated to place the least burden on the Court and the parties. If the Court orders the parties to follow the required

---

[2] "Fireman Statement" refers to "Plaintiffs' Statement Of Claim," filed by Fireman on August 5, 2008.

procedures of Fed. R. Evid. 1006 prior to a motion for summary judgment, then factual issues can be efficiently narrowed before the Court becomes involved. This is in the interests of justice and judicial economy.

Our proposed schedule is not the only option. We can simply file a motion for summary judgment, and require Fireman to present some logical proof of a labor shortage. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (moving party need only allege an absence of proof where opposing party bears the burden of proof at trial). However, we believe that an immediate summary judgment motion would be more awkward and less efficient than proceeding first with a review of Fireman's proposed summary exhibits, as we proposed in our motion.

## I. Fireman Again Fails To Offer Any Coherent Factual Predicate For Its Labor Shortage Claim

Four years after the complaint was filed, we still have no idea what labor market that Fireman is referencing when Fireman alleges that there was a "labor shortage." Apparently, Fireman has no idea either:

> Going forward, the Defendant is apparently concerned about undertaking "unfocused discovery" of "employment conditions for several classes of construction workers in an eight-state region over a period of several years." Unfortunately for the Defendant, this labor market was clearly established by the Corps of Engineers when it issued the Pine Bluff Modification and the Pine Bluff Project subsequently began recruiting traveler employees from those eight states to

> the great detriment of the Montgomery Point Project.
>
> Furthermore, any discovery by the Defendant into "employment conditions" in the eight-states should be narrow and limited since the primary concern is <u>the labor shortage created at the Montgomery Point Project</u>. At no point have the Plaintiffs asserted that a labor shortage existed in each of the eight states from which the Pine Bluff Project and Montgomery Point Project recruited.

Fireman Response To Schedule, at 7-8 (underlining added twice; third in the original).[3] This statement is incoherent in several ways.

First, there is the statement that United States Army Corps of Engineers ("Corps") "clearly established" a labor market by executing bi-lateral modification 89 to the Pine Bluff contract.[4] This is nonsense. How is a labor market "established" by a contract modification?

Second, Fireman cannot seem to decide whether the labor market extends across eight states, or whether it is limited to

---

[3] "Fireman Response To Schedule" means "Plaintiffs' opposition to defendant's motion for a special schedule for summary exhibits related to plaintiff's labor shortage claim," filed August 25, 2008.

[4] "Pine Bluff contract" refers to contract no. DAAA09-97-0098 between Raytheon Demilitarization Company ("Raytheon") and the United States, as amended.

one specific job site in Arkansas. After stating that modification 89 somehow "clearly established" an eight-state labor market, Fireman reverses course in the next paragraph and denies that it ever alleged that "a labor shortage existed in each of the eight states." Fireman Response To Schedule, at 8.

Third, Fireman appears to allege a specific labor market that extends no further than the boundaries of the Montgomery Point dam site:

> the primary concern is <u>the labor shortage created at the Montgomery Point Project</u>.

Fireman Response To Schedule, at 8 (emphasis in the original). What does this mean? How will it be proved? No contemporaneous document from the files of the joint venture has been presented to support any such micro-labor shortage, and no testimony has been proffered. In the statement of the claim filed on August 5, 2008, Fireman offered an illogical summary exhibit comparing planned "average monthly manpower" to actual hours, but we demonstrated that this proffer was meaningless, and Fireman has subsequently abandoned this proffer. Fireman has yet to make any other offer of proof.

Indeed, we are beginning to get the distinct impression that Fireman <u>never</u> intends to offer any admissible evidence of a labor shortage. Instead, it appears, Fireman intends to offer only some disconnected "expert opinion" that there was a labor shortage:

> Plaintiffs' expert witnesses are analyzing the labor market for the Montgomery Point Project and the competing Pine Bluff Project without complaint that their efforts are "unfocused" or that the labor pool being analyzed is too broad.

Fireman Response To Schedule, at 8 (emphasis added). This statement is incoherent, and worrisome, in several respects.

First, with regard to the underlined phrase, what "labor market" for two sites in Arkansas is referenced? There is no evidence that any such restricted labor market ever existed. Indeed, there is already contrary evidence. For example, Mr. Wallace, the manager for the joint venture's recruitment firm, stated that the competition for carpenters came from the Greenville Bridge project -- not the Pine Bluff project.

Second, how can Fireman's experts be "analyzing" a two-site labor market for which there is no evidence?

Third, why does Fireman trumpet that its experts are "analyzing" a non-existent labor market "without complaint?" This is not encouraging. To the contrary, it suggests that Fireman intends for us to all follow its experts "down the rabbit hole" into a wonderland without logical or evidentiary boundaries. Such an expedition is not in the interests of justice or judicial economy.

## II. A Focus On Summary Exhibits Is Most Efficient

It is difficult to imagine how the burden of persuasion to establish the existence of a specific labor market, or a specific labor shortage, could be met by anecdotal evidence. In any event, Fireman has yet to offer any such evidence to support its labor shortage claim. Instead, Fireman has offered various charts of uncertain status.

In this case, it is highly likely that any proof of a relevant labor market, or a relevant labor shortage, will take the form of a summary exhibit.

One way to move the case forward would be for the United States to file a summary judgment motion, wait for Fireman's response, and then attack the summary exhibits as improperly supported. In that circumstance, we would expect Fireman to seek to introduce revised summaries, and we would expect a further round of briefing on the revised offer of proof. We do not think that this is the most efficient method.

Instead, we request that Fireman be ordered to present us with its summary exhibits immediately so that the parties may go through the process mandated by Fed. R. Evid. 1006. In this way, many factual disputes may be promptly identified and, hopefully, resolved, before the summary judgment briefing begins.

In Fireman's response to our motion for a special schedule, Fireman insists that it has a right to discovery before Fireman

is required to disclose its summary exhibits. E.g., Fireman Response To Schedule, at 6-7. However, the existence of a labor market, or a labor shortage in such market, is not a secret locked in the e-mail archives of a construction inspector or a contracting officer. The definition of a labor market is an inquiry that Fireman should have made before filing a claim. Similarly, proof of damages (if any) is information that should be gathered by Fireman prior to filing a claim, and there is no reason to believe that any relevant proof of damages is to be gleaned from the files of the Corps.

In any event, Fireman has no right to unlimited discovery with regard to a meritless claim. For example, a summary judgment motion may be filed at any time more than 60 days past the date the complaint was filed -- without regard to when the discovery deadline might be. RCFC 56(a). Moreover, this Court possesses the power to make a special schedule in order to promote the interests of justice and judicial economy. RCFC 1.

Not only is further discovery regarding the purported labor shortage claim not required, it should be avoided. In the case's current posture, the United States can only guess at what labor market might be later identified by Fireman, and so the United States is faced with the prospect of investigating all possible labor markets. In order to rebut allegations made in Fireman's statement of the claim, the United States must engage in broad

fact-finding about the labor market for all construction workers in an eight-state market over a period of years. If the United States were to follow the "paint by numbers" approach to this litigation advocated by Fireman, the United States would also hire experts to analyze all the possible interpretations. This is a wild goose chase, and a terrible waste of time and money.

Fireman also complains that the proposed schedule would rush the production of expert reports:

> Plaintiffs have engaged multiple expert witnesses to opine on scheduling, damages, and the labor shortage. Each expert is working to prepare their reports to support a March 2009 trial.

Fireman Response To Schedule, at 7. Fireman is mistaken.[5] We do not seek to rush any expert report regarding the purported labor shortage; we seek to make any such report unnecessary. At worst, we hope to substantially narrow the scope of any such report.

If Fireman cannot produce summary exhibits to support some coherent allegation of a labor market, and some coherent allegation of a labor shortage within that market, then we will file a motion for summary judgment. If our motion is successful, no expert report will be needed. If our motion is partially successful, then only a more narrow expert report will be needed.

---

[5] Obviously, expert reports related to the fly ash claim would be unaffected by our proposed schedule.

Not only do we hope to make Fireman's expert report unnecessary, we hope to eliminate the need for the United States to hire any expert on labor markets. It is a waste of money to explore hypothetical labor markets and hypothetical labor shortages.

Fireman also objects to producing summary exhibits supporting damages related to its labor shortage claim:

> Plaintiffs fail to discern how the production of damages exhibits at this early stage assists in the process advocated by the Defendant.

Fireman Response To Schedule, at 3 n.4. Fireman is mistaken in two respects.

First, it is not an early stage of the litigation. Moreover, it is far from early for Fireman to calculate its damages; this should have occurred years ago.

Second, damage calculations are extremely helpful when defining the parameters of a claim. For example, in early August, Fireman cited additional wages paid to several categories of construction worker as part of its damages. Fireman Statement, at 20-21. In this way, we could determine that Fireman would offer proof of a labor shortage in all these categories (or else necessarily reduce its claimed damages). By requiring Fireman to disclose its summary exhibits supporting its claimed damages as well as summary exhibits supporting its claimed labor market and labor shortage, we gain valuable

evidence regarding the coherence -- or incoherence -- of the claim as a whole.

CONCLUSION

We respectfully request that the Court order a special schedule for Fireman to produce summary exhibits related to its labor shortage claim.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W
Washington, D.C. 20530
Tele: 202-616-0856
Fax: 202-514-7969

August 26, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on August 26, 2008, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR A SPECIAL SCHEDULE FOR SUMMARY EXHIBITS RELATED TO PLAINTIFFS' "LABOR SHORTAGE" CLAIM, AND DEFENDANT'S MOTION FOR EXPEDITED CONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier